Switz v. Black.

SWITZ v. BLACK ET AL.

1. **Practice:** JOINDER OF PARTIES: MORTGAGE. In an action to quiet title to distinct parcels of land, mortgagees of the land may properly ask to be made parties, and by cross-petition may seek a decree of foreclosure, and the grantees of a purchaser at a subsequent tax sale alleged to be fraudulent may also be joined and the validity of the tax sale determined therein.

2. **Vendor and Vendee:** INNOCENT PURCHASER. A party cannot claim protection as an innocent purchaser when the records disclose that his grantor has no power to convey, or that one assuming to convey as attorney in fact has no power so to do.

*Appeal from Iowa Circuit Court.*

WEDNESDAY, APRIL 18.

JOHN L. SWITZ purchased at tax sale the NW. ¼ SE. ¼, 33, 79, 9, and Alfred Sully purchased at the same time the SW. ¼

NE. ¼ of the same section, and one Beebe at the same time purchased another tract of land. All these purchases were made in October, 1869. Switz filed a petition to quiet his tax title, making James Black, the owner of the fee, and Wetherell, the holder of a mortgage executed by Black, parties defendant. Wetherell, at the time of the tax sale, held his mortgage from Black upon all three of these tracts of land, and one Ricord also held a mortgage from Black on the same lands. Each of these mortgages secured the payment of certain moneys by Black.

Wetherall answered the petition of Switz, and both he and Ricord, respectively, with leave of court, filed cross-petitions for the foreclosure of their mortgages, making Black, the mortgagor, Switz, the plaintiff, and Sully, Beebe, Clara H. Carhart and Patrick Byrne parties defendant, and asking decrees of foreclosure and the setting aside of the three several tax purchases and deeds to the various parcels of the mortgaged property. It was alleged in these petitions for foreclosure that the tax titles were fraudulent and void by reason of a corrupt and fraudulent agreement among the bidders at the tax sale, that each should bid by turn and that there should be no competition.

Service was made upon Black, Beebe and Carhart as defendants to the cross-petitions for foreclosure, and no appearance having been made for them, or either of them, a decree of foreclosure was rendered against them on the 28th day of April, 1875, and setting aside as illegal and fraudulent the tax purchase of Beebe and that of Sully, under which Carhart claimed, and vacating Carhart's interest.

Sully took a treasurer's deed, dated Nov. 12, 1872. On the 25th day of February, 1873, he conveyed the land by a general warranty deed to Clara H. Carhart. On the 11th day of November, 1873, Sully, by R. A. Sankey, his agent, by written agreement, sold the land to Patrick Byrne.

On the 8th day of July, 1874, Clara H. Carhart executed a power of attorney to Sully, authorizing him to make and deliver deeds of all lands owned by said Carhart in Iowa county, Iowa. On the 1st day of May, 1874, Clara H. Car-

hart, by Sully, her attorney in fact, executed a deed to Patrick Byrne for the land in controversy. It does not appear from the record before us when this deed was delivered, if at all.

There was an issue made by Switz upon the allegations of the cross-petitions for foreclosure, and also an issue made by Sully and Patrick Byrne. The answer of Byrne set forth that he was an innocent purchaser, and could not be affected by the alleged fraudulent tax sale.

The court below rendered a decree foreclosing the mortgages and finding that the tax sale was fraudulent, and providing that the holders of the tax titles should be paid the full amount of taxes and interest which would have been due to the county and State in case the land had not been sold. The defendant Byrne alone appeals.

*C. Hedges, R. A. Sankey* and *Dosh Brothers & Carstens*, for appellant.

*Clark & Haddock*, for appellees.

ROTHROCK, J.—I. The defendant Sully moved the court to strike out of both cross-petitions all those parts having relation to the title to the lands purchased by him at the said tax sale, because the petitions improperly joined different tracts and embraced matters not a part of the original cause of action, nor in any manner connected with the original suit.

1. PRACTICE: joinder of parties: mortgage.

This motion was overruled, and counsel for appellant now insist that the motion should have been sustained. We think the ruling of the court below was correct. There can be no question about its correctness as to the petition of Ricord. He was not a party to the original suit, and the other parties thereto, Black, Wetherell and Switz, made no objection as to misjoinder of parties. Ricord had the right at any time to commence an original suit in foreclosure, and it is entirely immaterial to the defendant Byrne in what manner the other parties are brought before the court. Wetherell was a party defendant to the original suit. His cross-petition was filed with leave of the court. His mortgage covered all three of

the tracts of land, and we are unable to see how Sully could compel him to foreclose his mortgage by piece-meal, because he, or rather his grantee, claimed no interest in the land claimed by Switz. What possible prejudice it could be to Sully or to Byrne we are unable to determine.

Our attention is called by counsel to section 2663 of the Code. We fail to see any provision therein which would preclude a joinder of parties under the facts disclosed in this case.

II. It is insisted that Wetherell and Ricord, being mere mortgagees, have no right of action against Sully and Byrne.

2. VENDOR and vendee: innocent purchaser. They certainly have a right as mortgagees to show the invalidity of the tax sales, and to subject the land to the payment of their mortgages, and this is the effect of the decree of the court below, as we understand it. It is proper to observe that defendant Byrne is not offering to redeem from the mortgages.

III. The evidence satisfactorily shows that there was an unlawful combination of bidders at the tax sale, by which it was agreed that there should be no competition. The defendant Byrne, however, insists that he is an innocent purchaser of the land in question without notice of the fraudulent character of the sale.

It will be seen by the foregoing statement of facts that on the 11th day of November, 1873, when Sully, by Sankey, his agent, contracted to sell the land to Byrne, Sully was not the owner. He had conveyed to Carhart on the 25th day of February, 1873, and the deed of conveyance was filed for record March 4, 1873. Next we have a deed from Carhart by Sully, attorney in fact, dated May 1, 1874, which has not been filed for record, and which, if delivered at all, must have been after the filing of the cross-petition herein.

The trial in the court below was had in November, 1875, and Byrne then testified that he had lately received a deed, and there is enough in the evidence to satisfy us that he knew there would be, or was, litigation about the title before he received his deed. He says: "When I heard it was going into suit to contest the title, I made up my mind I would pay

no more until this matter was disposed of, so a good title could be made to me."

The power of attorney from Carhart to Sully was made on the 8th day of July, 1874, filed for record September 1, 1874. It makes no reference to conveyances already made by Sully.

It will, therefore, be seen that when Byrne made his contract with Sully the record of titles showed that Carhart was the owner, and at the date of the deed from Carhart by Sully, as attorney, the records did not show that Sully had any such power. The power afterwards made only covers deeds to be made in the future.

Under all these circumstances Byrne can make no successful claim that he is an innocent purchaser without notice. If he had examined the records of titles he would have seen that the party he contracted with had no title to convey, and that the attorney in fact who attempted to convey had no power to convey.

AFFIRMED.