FOSTER, Executrix, Appellant, vs. SAWYER COUNTY, Respondent.

*October 11—November 7, 1928.*

For the appellant there were briefs by *Hanitch, Hartley & Johnson* of Superior, attorneys, and *Clifton Williams* and *Claude D. Stout,* both of Milwaukee, of counsel, and oral argument by *Mr. Clarence J. Hartley, Mr. Theo. W. Brazeau,* and *Mr. Stout.*

A separate brief for appellant was also filed by *Goggins, Brazeau & Graves* of Wisconsin Rapids, as *amicus curiæ.*

For the respondent there was· a brief by *J. C. Davis* of Hayward, and oral argument by *Mr. Davis* and *Mr. V. J. O'Kelliher* of Oconto.

The following opinion was filed November 7, 1928:

CROWNHART, J. The statutes involved in the consideration of this case are printed in the margin.[1] Sec. 75.22,

[1] "75.22 *Tax sales; void; refund; immaterial errors.* If after the sale or conveyance of any lands sold for the nonpayment of taxes and within the time hereinafter prescribed it shall be discovered

formerly sec. 1184, in the year 1897 had existed in substance the same as in its present form ever since the Statutes of 1849, where it is found in ch. 15, sec. 111. In 1897 the legislature enacted as follows:

"Section 1184 of the Revised Statutes of 1878 is hereby amended by adding to said section the following: 'But no sale, certificate, or conveyance shall be deemed invalid within

---

that the sale or the certificate issued thereon was invalid, the county board shall make an order, briefly stating the reason therefor, directing that the money paid for such certificate on the sale, and all subsequent charges thereon, and all subsequent taxes paid on the lands described therein by the purchaser or his assigns, be refunded with interest to such purchaser or his assigns, upon the delivery of the certificate or deed to be canceled; and if the county treasurer shall, in pursuance of such order, offer to the person entitled thereto his money as aforesaid, and he shall refuse to receive the same and cancel the certificate or deed, he shall not be entitled to receive any interest on the money so paid by him after the day of such offer and refusal; nor shall any recovery ever be otherwise had against the county on such deed or certificate. But no sale, certificate, or conveyance shall be deemed invalid within the meaning of this section by reason of any mistake or irregularity in any of the tax proceedings not affecting the groundwork of the tax; nor shall any county be liable to pay or refund any moneys by reason of any such mistake or irregularity."

"75.32 *Taxation and sale of lands held by counties.* Real property upon which the county holds any certificate of tax sale shall continue liable to taxation and to sale for unpaid taxes, and the county shall be the exclusive purchaser at the sale; . . ."

"75.34 *Sale of certificates by counties.* (1) The several county treasurers, when no order to the contrary shall have been made by the county board, shall sell and transfer, by assignment, any tax certificates held by the county to any person offering to purchase the same for the amount for which the land described therein was sold, with interest thereon at the rate of fifteen per cent. per annum; but every such sale shall include all certificates in the hands of such treasurer on the same lands.

"(2) No county board shall, at any session thereof, sell, convey or transfer, or order or direct the sale, conveyance or transfer of any tax certificates owned or held by the county at less than the face value thereof unless such board shall have previously directed the county clerk to give notice of their intention so to do by publication thereof for four successive weeks in some newspaper published in the English language in such county and having a general circulation therein, and such notice has been so given. Any and all sales, conveyances or transfers of such tax certificates made in violation of these provisions shall be null and void."

the meaning of this section by reason of any mistake or irregularity in any of the tax proceedings not affecting the groundwork of the tax; nor shall any county be liable to pay or refund any moneys by reason of any such mistake or irregularity.' "

This amendment became part of sec. 75.22 and has remained a part of that section since 1897.

By sec. 75.32, which also existed in the Statutes of 1849, and has remained in substance the same ever since, where the county holds prior certificates of sales it is required at a subsequent sale to be the "exclusive purchaser at the sale." In violation of such statute the county treasurer sold the certificates here involved to appellant, and received payment therefor from appellant. Manifestly, it requires no argument to show that such sale was void, and the purchaser got no title to the certificates. Hence, under the statute as it existed prior to the amendment of 1897, the purchaser was entitled to a refund of the purchase price upon presentation of a proper claim to the county, and still is so entitled to refund, unless the amendment of 1897 bars such claim.

What was the legislative intent in using the phrase, "mistake or irregularity in any of the tax proceedings not affecting the groundwork of the tax?" In construing a statute we should consider other statutes *in pari materia,* the mischief to be corrected, and the words of the statute, in an effort to harmonize the general statutory scheme on the subject matter involved and to carry forward the legislative intent, so far as possible, without doing violence to the plain and unequivocal language of the particular statute under consideration.

The general scheme of the statutes is to afford revenue for the operation of the government. Sale of lands for taxes is a step in procuring such revenue, and a valid tax certificate is a lien on land that may ripen into a good title. But when the county holds tax certificates on lands having been sold for taxes, it is necessary for it to purchase the cer-

tificates of subsequent sales in order to protect its certificates already held, for a tax deed on later certificates cuts off the lien of the prior certificates. Therefore, for the protection of the county, the statute properly commands that the county become the exclusive purchaser of subsequent tax certificates where at the time it holds prior certificates. So it will be seen that the statute, to carry out the legislative purpose, must be construed as mandatory, and the county treasurer was without power or authority in making the sale to the appellant. The certificates were invalid for that reason.

What was the mischief to be remedied? That is disclosed in an opinion by this court in *Pier v. Oneida County*, 93 Wis. 463, 67 N. W. 702, decided in 1896. To illustrate: It was there held that if the delinquent tax returns were not signed by the town treasurers; if the affidavit of posting the notice of tax sales had not been made as required; or if no statement describing lands sold had been posted, the certificates of sale were invalidated so that a refund could be had under sec. 1184. This court, in *Ward v. Walters*, 63 Wis. 39, 22 N. W. 844, had held that the statutes affecting tax sales must be strictly complied with or the tax sale would be void. These things were mere technicalities of procedure and had nothing to do with the merits of the tax. Thus whole tax sales were avoided by the mere failure to post a notice, or to make and file an affidavit of such posting where in fact the posting had been properly made. These were mistakes or irregularities in the proceedings not going to the groundwork of the tax. It will be noticed that the amendment refers to any *mistake* or *irregularity* not going to the groundwork of the tax. It must be assumed that the decision in the *Pier Case, supra,* just before the meeting of the legislature, brought about the act of 1897 amending sec. 1184. By that amendment a tax sale or deed shall not be deemed invalid within the meaning of the section "by reason of any mistake or irregularity in any of the tax proceedings not af-

fecting the groundwork of the tax," and no county shall be liable to refund any moneys because "of any such mistake or irregularity."

It appears that the legislative intent did not cover a case as here presented, where the tax sale was wholly without authority of law, and where such sale was contrary to public policy. Neither by the letter of the amendment nor by the plain purpose of the law is it applicable to a case as here presented. The amendment did not repeal the law as it stood prior thereto. It was left in force for some purpose. We should give it such effect as will serve that purpose. We should read the statute as providing a refund in all cases where the tax certificate is invalid and its invalidity does not depend upon *mistakes or irregularities of the tax proceedings*. The prohibited sale was void. It was no sale in fact.

"A statute may be plain and unambiguous in its letter, and yet, giving it the meaning thus suggested, it may be so unreasonable or absurd as to involve the legislative purpose in obscurity. *Rice v. Ashland County,* 108 Wis. 189, 84 N. W. 189. In such case, or when obscurity otherwise exists, the court may look to the history of the statute, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, though it be out of harmony with, or even contradict, the letter of the enactment. A thing which is within the intention of the lawmakers and by rules for construction can be read out of it, 'is as much within the statute as if it were within the letter.'" *Pfingsten v. Pfingsten,* 164 Wis. 308, 313, 159 N. W. 921.

As here interpreted, the statute makes a workable and just law for all parties concerned. In no event could we impute the legislative intent to take the purchase money paid for the void certificates and give no consideration to the purchaser therefor. That would be contrary to all principles of justice.

If the statute were held to withhold 'relief, undoubtedly a remedy would exist in an action for money had and received. Upon the ground that the statute should be interpreted to provide a refund in a case where the county treasurer had no authority to make a sale, the order sustaining the demurrer must be reversed.

*By the Court.*—Order reversed, and cause remanded with directions to overrule the demurrer.

A motion for a rehearing was denied, with $25 costs, on January 29, 1929.