476

STATE EX REL. LITTLE YELLOW DRAINAGE DISTRICT and others, Respondents, vs. JUNEAU COUNTY and another, Appellants.

*September 9—October 8, 1929.*

For the appellants there were briefs by *Clinton G. Price,* district attorney of Juneau county, and *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

*B. M. Vaughan* of Wisconsin Rapids, for the respondents.

OWEN, J. This is a *mandamus* proceeding instituted by the Little Yellow Drainage District, a drainage corporation, to compel the county treasurer of Juneau County to pay over to the drainage district certain moneys realized by said county upon the sale of drainage assessment certificates upon lands located in said drainage district. The controversy arises because the county sold to one J. T. Dithmar certain drainage assessment certificates amounting to over $3,000, which certificates were upon lands upon which the county held prior drainage certificates. Upon discovering this fact, Dithmar filed a claim against the county for the amount of such certificates, claiming the sale of such certificates to him to have been in violation of law and void. The county repaid to Dithmar the amount of such certificates and charged the same back to the drainage district. This was done under the provisions of sec. 75.22, Stats., which require the county to refund all amounts paid for tax certificates when it is discovered that the sale, or the certificate issued thereon, was invalid. It is not questioned that these provisions apply to drainage assessment certificates as well as to ordinary tax certificates.

The trial court, however, took the same erroneous view that was entertained by the trial court in *Foster v. Sawyer County,* 197 Wis. 218, 221 N. W. 768, of that provision of sec. 75.22 providing: "But no sale, certificate, or conveyance shall be deemed invalid within the meaning of this section by reason of any mistake or irregularity in any of the tax proceedings not affecting the groundwork of the tax; nor shall any county be liable to pay or refund any moneys

by reason of any such mistake or irregularity." Since the judgment was rendered herein, *Foster v. Sawyer County, supra,* was decided by this court, holding that the sale of a portion of the tax certificates held by the county upon real estate is void, that it vests the purchaser with no title to such certificates, and that it is the duty of the county to refund the amount paid therefor to the purchaser. That decision is decisive of the duty of the county to refund to Dithmar the amount he paid to the county for the drainage assessment certificates upon lands upon which the county held other such certificates. This conclusion is not now seriously controverted by the relators, but they seek to sustain the judgment for another reason.

The relators claim that the county became liable to the drainage district for the proceeds of all drainage assessment certificates bid in by it between the years 1919 and 1923. This claim is based upon the fact that prior to the enactment of ch. 557, Laws of 1919, a provision of the drainage law, sec. 1379—25, par. 3, specifically provided that such drainage certificates should be bid in by the county treasurer, in trust for the county, and it was also provided, "but the county shall not in any way be liable for such unpaid or future drainage assessments;" and by sec. 1379—25b it was further specifically provided that "The county bidding in such drainage assessment certificates shall not be held or required to pay therefor, or be in any manner held liable thereon, until such time as it takes deed to the county thereon, but shall hold and sell and assign the said certificates in trust for the benefit of the drainage district in which the lands so sold are situated."

These provisions of the statutes of course constitute specific affirmative declarations that the county incurred no liability to the drainage district by reason of the bidding in of such drainage assessment certificates. However, the drainage laws were revised and rewritten by ch. 557, Laws of 1919, and these express provisions negativing the liability

of the county were dropped out of that chapter. They were restored by ch. 327, Laws of 1923. The question arises, What was the legislative purpose in dropping these provisions out of the Laws of 1919?

Ch. 557, Laws of 1919, was a revision of the drainage laws of the state prepared by a commission appointed by the governor, upon which we find the names of Theodore W. Brazeau and B. M. Vaughan. Mr. Vaughan is here contending that the purpose of the elimination of these provisions of the law was to make the county liable to the drainage district for all delinquent drainage assessments returned to the county. Mr. Brazeau contends that they were dropped out because they were merely redundant and superfluous; that the non-liability of the county was plain from the remaining provisions of the law, and that the presence of these provisions served no purpose except to incumber the statutes.

It must be conceded that these provisions might have been dropped out for either of these purposes. But it is recognized that in the revision and codification of a law, good work on the part of the revisors calls for the elimination of redundant and immaterial matter. No legislative intent to change the law in this respect should be imputed if, by an examination of the remaining provisions of the law, the presence of those dropped out should appear to be without purpose.

Sec. 1379—24, created by ch. 557, Laws of 1919, requires the local treasurers to return delinquent drainage assessments to the county treasurer "in the same manner and at the same time as delinquent taxes, but separately therefrom." It also provides that "The county treasurer shall advertise the same in his list of lands to be sold for unpaid taxes, and unless paid to him prior to the tax sale, he shall sell such lands for the taxes and drainage assessments against the same, treating such drainage assessments the same as, but keeping them separate from, the unpaid taxes on his records." Par. 6 of that section provides that "The rules of law applying to the

collection of taxes and sale of lands for taxes and issuance of tax deeds shall, unless in conflict with the drainage district law, apply to the collection of and sale of lands for drainage assessments and issuance of drainage assessment deeds." We find no specific language in this law that the county treasurer shall bid in drainage assessment certificates for the county either in trust or as absolute owner thereof, but his duty in this respect necessarily results from the provision making the rules of law applying to the collection of taxes and sale of lands for taxes and issuance of tax deeds applicable to these drainage assessments. Sec. 74.42, Stats., does now, and did in 1919, require the county treasurer to bid off for the county all lands which could not be sold, for the amount of taxes, interest, and charges thereon. The liability of the county for the amount of the general taxes on land so bid in, is well settled and understood. The county assumes no liability to the local municipality for such taxes until it takes a tax deed. *In re Dancy Drainage District, ante,* p. 85, 225 N. W. 873.

A legislative purpose to make the county absolutely liable to the drainage district for delinquent drainage assessments is not to be lightly imputed. Such a rule would make the county a guarantor of the payment of all such assessments without its consent. Under such a rule drainage assessments would have the resources of the entire county back of them, and there could be no such failures as arose in the Dancy drainage district, the affairs of which have frequently been before us. Why should a provision negativing the liability of the county on these drainage tax certificates be necessary, when the plan of the drainage law taken as a whole reveals simply an intent to utilize for the collection of these drainage assessments the machinery perfected by statute and court decisions for the collection of general taxes? No such intent should be imputed to the legislature in the absence of a plain, express, affirmative provision imposing such a liability

upon the county. No such affirmative provision is to be found anywhere in the law, but, on the contrary, the provisions of par. 2 of said sec. 1379—24 of ch. 557 of the Laws of 1919 contain an express negation of any such liability. That paragraph requires the county treasurer to keep books of account with the drainage district. By the provisions of that section he is required to credit the drainage district with all sums received by the county as principal on the sale of drainage assessment certificates at the tax sale, except such certificates as shall be sold to the county, and "the principal and accrued interest on all drainage assessment certificates up to the date of the drainage assessment deed, in case the county has taken a deed to itself on any drainage assessment certificate." In the face of these provisions it is difficult to see why an express provision negativing the liability of the county to the drainage district for the amount of drainage certificates which the law commands the county treasurer to bid in for the county, should be necessary. He is required to credit the drainage district with all sums received by the county as principal on the sale of drainage assessment certificates at the tax sale, but not on such certificates as shall be sold to the county, and he shall credit the drainage district with the amount of such certificates only when the county takes drainage assessment deeds thereon. This expressly imposes upon the county the exact liability that the rules of law impose upon it with reference to general taxes. The further provisions of the law, dropped out of ch. 557, Laws of 1919, and restored by the provisions of ch. 327, Laws of 1923, are mere repetition of what already clearly appears. The law of 1923 accomplished no purpose whatever other than to incumber the statutes and give rise to unnecessary confusion with reference to prior legislative intent.

*By the Court.*—The judgment is reversed, and cause remanded with instructions to dismiss the petition.